**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------X

In Re:

JOSHUA M. PRENSKY,

                                  Debtor.
----------------------------------------------------------X
CLAIR, GRIEFER LLP

                                  Plaintiff, Pro Se

- against-

JOSHUA M. PRENSKY,

                                  Defendant.
----------------------------------------------------------X

Chapter 7

Case No.: 08-10428 (RG)

Ad. Pro. No. 08-1303 (MBK)

APPEARANCES:

Joseph DeSimone, Esq.
Clair, Griefer LLP
555 Madison Avenue
9th Floor
New York, New York 10022
Attorney for Plaintiff, Pro Se

Avrom R. Vann, Esq.
13-35 Henrietta Court
Fair Lawn, New Jersey 07410
Attorney for Defendant, Joshua M. Prensky

**MICHAEL B. KAPLAN, U.S.B.J.**

**OPINION**

**I.**     **JURISDICTION**

The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(b) and the Standing Order of the United States District Court dated July 10, 1984 referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).   Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). The statutory predicate for the relief sought herein is 11 U.S.C. § 523(a)(15)[1]. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[2]

**II.**     **FACTS AND PROCEDURAL HISTORY**

Joshua Prensky ("Debtor") and Miriam Prensky ("Ms. Prensky") were married on September 4, 2000.  On April 1, 2005, Debtor commenced a divorce action against Ms. Prensky in the New York State Supreme Court.  The divorce action was initially venued in Nassau County and transferred subsequently to New York County on July 21, 2005.  At all times, Ms. Prensky was represented by the Plaintiff, Clair Griefer, LLP ("CG, LLP").

A trial regarding the divorce action took place on November 27, 29, and 30, 2006 and on May 7 and 9, 2007.  On November 5, 2007, Judge Evans of the New York State Supreme Court issued a Decision and Order (the "Order") and the parties were divorced by way of a

---

[1] Absent contrary indication, all "Code," chapter, and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 as amended by the Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005 ("BAPCPA"), Pub. L. 109–08, 119 Stat. 23. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "FRCP" and "FRE" references are to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, respectively.

[2] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

corresponding Judgment of Divorce dated December 12, 2007.  Ms. Prensky had petitioned the court for an award of legal fees in the divorce action.  The trial court awarded counsel fees and the Order stated as follows:

> "[Miriam Prensky] is the less monied spouse.  Her application for attorney's fees has merit as [Debtor's] actions unnecessarily prolonged this litigation without regard to the financial impact of his conduct.  From the inception of this case in an improper venue, money was squandered.  [Debtor] initiated the action in Nassau County, necessitating a change of venue to New York County, the location of the marital residence and their children's school, the county in which [Miriam Prensky] works and where [Debtor] attended dental school.  [Debtor] violated the court's *pendente lite* order by failing to pay the rent for the marital residence, thereby necessitating enforcement motions and ultimately a contempt hearing.  Additionally, he prolonged discovery by withholding relevant documents.  [Debtor] and his family members were not forthcoming when called to testify at third party deposition, thereby causing unnecessary expense and delay.
>
> ***
>
> After reviewing the billing records, I find that [Miriam Prensky] is entitled to counsel fees from plaintiff in the amount of $85,000, a sum that is calculated to level the playing field in the context of this unnecessarily prolonged litigation.  This sum shall be paid directly to [Miriam Prensky's] counsel in three equal installments, the first of which shall be paid on or before April 1, 2008.  The two subsequent payments shall be made on July 1, 2008 and September 1, 2008.

The Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on January 10, 2008, and was granted a discharge on April 11, 2008, pursuant to 11 U.S.C. § 727.  Debtor did not make any payments to CG, LLP as required by the Order. On April 8, 2008, CG, LLP filed an adversary complaint seeking to except the debt owed to them by Debtor from discharge pursuant to 11.U.S.C. § 523(a)(15).  CG, LLP subsequently filed a Motion for Summary Judgment seeking judgment in favor of CG, LLP in the amount of $85,000,

3

plus interest, attorney's fees, and other charges due. Debtor cross-moved for summary judgment on grounds that CG, LLP lacked standing to contest the dischargeability of the fees, contending that CG, LLP is not a "spouse, former spouse or child" as required under 11 U.S.C. § 523(a)(15) and that Plaintiff failed to establish that the attorneys' fees were in the nature of support.[3] The parties appeared for oral argument on August 6, 2009, and were asked to submit supplemental letter briefs supporting their respective positions in light of case law cited by the Court. After consideration of the submissions and the record, for the reasons discussed below, summary judgment is granted in favor of CG, LLP and Debtor's cross-motion for summary judgment is denied.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has indicated, "Summary Judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir.1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir.2001) (citing Celotex

---

[3] Debtor also argued that even if the debt to CG, LLP were an obligation in the nature of support, the Debtor's inability to pay the debt entitles him to a full discharge. As CG, LLP subsequently argued and Debtor's counsel ultimately conceded, this argument was based on the pre-BAPCPA version of 11 U.S.C. § 523(a)(15) which contemplated, among other things, a debtor's ability to pay as part of a dischargeability determination.

4

Corp., supra, 477 U.S. at 323). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law." Id. at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). If the moving party will bear the burden of persuasion at trial, the party must support its motion with credible evidence-using any of the materials specified in Rule 56(c)- that would entitle it to a directed verdict if nor controverted at trial. Celotex Corp., supra, 477 U.S. at 331. Such an affirmative showing shifts the "burden of production" to the party opposing the motion and requires the party to either demonstrate the existence of a "genuine issue" for trial or to request additional time for discovery under Rule 56(f). Fed. R. Civ. P. 56(e).

Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982); Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir.1972). If the nonmoving party's evidence is a mere scintilla or is not "significantly

probative," the court may grant summary judgment. Liberty Lobby, Inc., supra, 477 U.S. at 249-250. The non-movant will prevail only if the evidence produced is of "sufficient quantum and quality" to allow a rational and fair-minded fact finder to return a verdict in his favor, bearing in mind the applicable standard of proof that would apply at trial on the merits. Id. at 249.  The submissions of both parties note the absence of disputed facts and urge the Court to determine this matter at this stage of the proceedings.

## IV.    OPINION

11 U.S.C. § 523(a)(15) provides, in pertinent part, that:

> "a discharge under section 727 of this title does not discharge an individual debtor from any debt to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit."

Likewise, paragraph (5) of § 523(a) states that a discharge under § 727 of the Code does not discharge an individual debtor from any debt for a "domestic support obligation" as that term is defined in 11 U.S.C. § 101(14A).  Prior to the enactment of BAPCPA in 2005, § 523(a)(15) included a requirement that the debtor have an "ability to pay" the debt.  However, BAPCPA modified § 523(a)(15) to remove, among other things, the "ability to pay" component, thereby no longer conditioning the discharge of debts of the nature described in § 523(a)(15) upon the Debtor's ability to pay.  The issue before the Court is whether attorneys fees awarded to a spouse, but payable directly to her law firm, are dischargeable under 11 U.S.C. § 523(a)(15).[4]

---

[4] Although not pled in this case, attorneys' fees awarded in a matrimonial action may also be an aspect of a domestic support obligation and, therefore, nondischargeable pursuant to 11 USC § 523(a)(5). The term "domestic support obligation" is defined by 11 USC § 101(14A) which, in relevant part, states as follows:

The Debtor argues that the debt is dischargeable because CG, LLP lacks standing to pursue its claim, as it is not the "spouse, former spouse, or child of the debtor" as required by § 523(a)(15).  In support of its argument, the Debtor relies on <u>In Re Brooks</u>, 371 B.R. 761 (Bankr. N.D.T.X. 2007) which holds that a law firm may not assert a claim for non-dischargeable attorneys fees as a "domestic support obligation" under § 523(a)(5) nor a divorce-related debt under § 523(a)(15).  In <u>Brooks</u>, the law firm that represented the debtor's former spouse sued both the debtor and the former spouse for fees incurred during their divorce action.  Fees were awarded to the law firm with a portion to be paid by each the debtor and the former spouse.  The Court in <u>Brooks</u> considered the plain language of the Bankruptcy Code and held that because the law firm was not a "spouse, former spouse or child of the debtor," they were not an entity that could be owed nondischargeable debt.  The Debtor advocates that this Court adopt the same "plain language" interpretation of "spouse, former spouse or child of the debtor" as did the Court in <u>Brooks</u>.  Debtor's argument glosses over the factual distinction between the <u>Brooks</u> case and the case *sub judice*.  In <u>Brooks</u>, the law firm sued the debtor and the former spouse for fees during the pendency of a divorce action.  The court awarded fees to the law firm, payable by

---

The term "domestic support obligation" means a debt that accrues before, on or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable non-bankruptcy law notwithstanding any other provision of this title, that is-
    (A)    owed to or recoverable by-
        (i)    a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
    (B)    in the nature of alimony, maintenance, or support…of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
    (C)    established…before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of-
        (ii)    an order of the court of record;

each party, thereby making the debt at issue there "recoverable by" only the law firm. The debt was not awarded or owed *to* either spouse but rather payable and owed *by* each of them to the law firm. Clearly, under those circumstances, the fees were not of the kind owed to a "spouse, former spouse or child of the debtor." This stands in marked contrast to the facts in the case at bar, where the matrimonial court expressly ruled that could fees were being awarded to Ms. Prensky to "level the playing field." Accordingly, this Court is neither bound nor persuaded by the Brooks case.[5]

A comparative examination of the text of §§ 523(a)(5) and 523(a)(15) pre and post BAPCPA is revealing. Prior to BAPCPA, § 523(a)(5) encompassed debts payable to a "spouse, former spouse or child of the debtor," whereas § 523(a)(15) had no such limitation. Post-BAPCPA, § 523(a)(5) was revised to relate only to a "domestic support obligation," now defined by § 101(14A), and applicable to those debts owed to a "spouse, former spouse or child of the debtor." § 523(a)(15) was revamped to include, among other things, the "to a spouse, former spouse or child of the debtor" language that had been included in § 523(a)(5). § 523(a)(15) is strikingly similar to the pre-BAPCPA version of § 523(a)(5). Clearly, the amendments were intended to increase the scope of the discharge exception effected by the 2005 amendments and not limit the protection to three distinct classes of creditors- spouses, former spouses and children of the debtor. Congress has expressed its recognition that the economic protection of dependent spouses and children under state law is no longer accomplished solely through the traditional mechanism of support and alimony payments. In Re Golio, 393 B.R. 56, 62 (Bankr. S.D.N.Y. 2008).

---

[5] During oral argument, counsel for the Debtor relied on In Re Poppleton, 382 B.R. 455 (Bankr. I.D. 2008) which offers minimal guidance to the Court.

8

The few courts that have addressed the issue in this case are divided. Some courts require an indemnity, or "hold harmless" clause creating direct liability from the debtor to the former spouse. Other courts hold that an obligation to pay debts arising out of a separation or divorce agreement run from the debtor to the ex-spouse without an express indemnity or "hold harmless" clause. In Re Shepard, 2008 WL 5157898 (Bankr. D.N.M. 2008) (citations omitted). Several post-BAPCPA cases refer back to the pre-BAPCPA case of In Re Gibson, 219 B.R. 195 (B.A.P. 6th Cir. 1998). In Gibson, the court rejected the argument that debts owed to third-party creditors are beyond the ambit of § 523(a)(15). In that case, there was a separation agreement, subsequently integrated into the divorce decree that provided that the debtor would pay a note owed to his non-debtor former wife's stepfather. After the debtor declared bankruptcy, the stepfather sued his stepdaughter for payment on the note; thereafter, she filed an adversary complaint against her debtor ex-husband. The Bankruptcy Appellate Panel held that the then applicable version of § 523(a)(15) excepted the debt from discharge notwithstanding the fact that either the debt was payable to a third party, or that the separation agreement lacked a "hold harmless" or other indemnification language. Id. at 205-206. Under Gibson, for a debt to qualify under § 523(a)(15), the critical issues are the nature of the debt, not the payee, and whether under state law the debt was incurred in the course of a divorce or separation. Id. at 203. The Gibson court based its finding on a plain reading of the word "incurred" and noted that the statute does not impose a "direct pay" requirement. Id. Debt may be incurred to a "spouse, former spouse or child of the debtor", but the mere fact that it is payable to a third party is not determinative as to nondischargeability. See In Re Cheatham, 2009 WL 2827951 (Bankr. N.D.O.H. 2009).

The Court in Cheatham examined whether state law provides the spouse, former spouse or child of the debtor with a right or remedy that meets the federal definition of a "claim." Under the Bankruptcy Code, the term "debt" means liability on a "claim." 11 U.S.C. § 101(12). A claim is either a right to payment or a right to equitable remedy for breach of performance if such breach gives rise to a right of payment. 11 U.S.C. § 101(5). Ms. Prensky's "claim" arises by way of the Order of the trial court. The Order finds Ms. Prensky to be "the less monied spouse" and bases the award of attorneys' fees on an attempt to "level the playing field." The debt is owed to Ms. Prensky but payment was ordered to be made directly to her law firm in three equal installments. Inasmuch as state law gives Ms. Prensky the right to enforce the award of attorneys' fees in the Order, and that such the entitlement "gives rise to a right to payment," the debt must be considered a claim incurred in the course of a divorce and, as such, is non-dischargeable.[6] Ms. Prensky is the intended beneficiary of the obligation and possesses both the rights and remedies at state law to enforce the Order. It is immaterial that the debt is payable to CG, LLP, which has made it clear that it will pursue Ms. Prensky for the unpaid attorneys' fees if this Court finds them to be dischargeable. The Debtor's obligation to pay the attorneys' fees does not evaporate simply because the trial court attempted to coordinate a more expeditious method of payment.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that attorneys fees were divorce-related debt incurred by the debtor in the course in the course of the divorce proceedings between the parties and are nondischargeable pursuant to 11 U.S.C. § 523(a)(15). Summary judgment in favor of CG, LLP on Count I of the Complaint is granted. Debtor's cross-motion for summary judgment

---

[6] The lack of hold harmless language in the Order is of no moment, pursuant to Gibson. Supra.

is denied. Absent language in the November 5, 2007 Order providing for post-judgment interest or further attorneys fees and/or costs of collection with respect to the $85,000 fees awarded, the non-dischargeable judgment to be entered by the Court will not include such additional recoveries. Plaintiff is directed to submit an appropriate form of judgment.

Dated: November 2, 2009

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge